In re COMINGORE, Collector.

(District Court, D. Kentucky. July 5, 1899.)

1. EVIDENCE—REQUIRING PRODUCTION OF DOCUMENTS—RECORDS OF COLLECTOR OF INTERNAL REVENUE.

The reports made by a distiller, or by storekeepers or other officers, to a collector under the internal revenue laws, are in no sense public records, but are executive documents which the United States, in its sovereign capacity, has acquired for the sole purpose of administering its own governmental affairs, and are its private property, the custody and use of which the secretary of the treasury has the lawful authority to control by proper regulations.

2. SAME—POWER OF STATE COURTS.

Under Rev. St. §§ 161, 251, 321, a regulation promulgated by the commissioner of internal revenue, under the direction of the secretary of the

treasury, prohibiting collectors from producing the records of their offices, or furnishing copies thereof, for the use of third persons, or for use as evidence in behalf of litigants in any court, is a valid and binding regulation; and neither a state nor a state court has authority to require a collector to violate it, or to punish him for contempt because of his refusal to produce such records, or to testify to their contents.

**2. SAME—CERTIFIED COPIES OF COLLECTOR'S RECORDS.**

There is no statute of the United States requiring or permitting a collector of internal revenue to make or certify copies of reports on file in his office, and a state has no authority, either in its sovereign capacity or as a litigant, to impose such duty upon him.

This was an application by David N. Comingore, collector, for a writ of habeas corpus.

R. D. Hill, U. S. Dist. Atty., for petitioner.
Winslow & Winslow, for respondent.

EVANS, District Judge. The petitioner for the writ of habeas corpus in this case is the collector of internal revenue for the Sixth district of Kentucky, duly appointed and commissioned by the president of the United States. Previous to March 1, 1899, the auditor's agent, claiming that Elias Block & Sons, distillers, had failed to list for state taxation certain distilled spirits in their warehouse in Carroll county, Ky., instituted civil proceedings against them in the name of the commonwealth of Kentucky, under the provisions of section 4241 of the Kentucky Statutes, to compel an assessment of the spirits for taxation. On that day the petitioner, in obedience to a subpoena, appeared as a witness to give his deposition in the case before W. A. Price, a notary public. After being duly sworn, he was asked several questions, to which he made answers as follows:

"(3) Did the defendants, Block & Sons, owners of said distillery, make, under the provisions of the laws of the United States, reports to your office as to the amount of liquor which they manufactured and deposited in the bonded warehouses located on said distillery premises from the year 1887 down to the present time? If so, how often, under the provisions of the law, do they make such reports? A. They make reports monthly. (4) Did they, under the provisions of said law, also make applications to your office during said time for permission to withdraw such liquors from bond? If so, how often? A. They make applications whenever withdrawals are made,—daily, if they choose. (5) Are these reports of deposits and requests for privilege to withdraw, or official records made therefrom, now in your office, or under your control in any way, for the period commencing October 1, 1885, and ending July 1, 1897? A. They are on the files of this office, but not under my control, except as collector. (6) Please file official copies of them, and make them a part of your deposition. A. I will have to decline to do this, under section 3167 of the Revised Statutes of the United States, and the rulings of the department. (7) What rulings of the department do you refer to, other than section 3167 of the statutes? A. The ruling of the department is as follows: 'The department does not permit the giving out of anything contained in internal revenue returns or documents by a collector, storekeeper, or any other officer of a collection district, for purposes other than those which the statutes of the United States contemplate.' (8) Who made the ruling of the department? A. It is made by the secretary of the treasury, through the internal revenue commissioner."

For failing to answer some of the questions in the manner desired, and for failing to furnish the official copies demanded, the notary public then adjudged that the petitioner should pay a fine of $5, and

be confined in the county jail for six hours, or until he was willing fully to answer the questions and furnish the copies. This judgment of the notary public was, per se, ineffective, under section 538 of the Kentucky Code of Practice, and had to be reported to the court in which the litigation is pending; the Code requiring that the court shall render judgment for the fine imposed, to the extent it is approved. The notary reported this action to the county court, by which it was approved, and judgment entered in the following form:

"It is therefore ordered and adjudged by the court that the plaintiff's motions be sustained, and that plaintiff is entitled to use as evidence the facts stated in the reports and papers filed by any or all of the defendants in the office of the collector of internal revenue for the Sixth district of Kentucky, and also such facts as are stated in the reports made to said office by certain officers known as 'United States storekeepers,' and any other similar records, papers, documents, or exemplifications in said office tending to show the amount of liquors on hand at the distillery of the defendants on the 15th day of September, 1889, 1890, 1891, 1893, 1894, 1895, 1896, and on the 15th day of November, 1892. It is further ordered that the witness D. N. Comingore make or cause to be made, or permit the plaintiff, its agent or attorneys, to make, true copies of such of said papers as the plaintiff or its attorneys may demand, and that said Comingore, as collector, attest the same and attach his seal of office thereto, if he has such seal, and that he permit the plaintiff or its agent or attorneys to compare said copies with the originals and verify the same, and that he also testify further in regard to same, if demand be made; and leave is hereby given to complete the taking of said deposition on giving proper notice, and for this purpose the clerk is directed, upon request of plaintiff's attorneys, to transmit said deposition as now on file to W. A. Price, notary public, Covington, Ky. It is further adjudged that the action of the notary public, W. A. Price, in adjudging the witness D. N. Comingore to be in contempt for failure to file copies of reports, papers, documents, and exemplifications, or to testify as to their contents as requested, be sustained and affirmed, and that the commonwealth of Kentucky recover of said D. N. Comingore the sum of five dollars as a fine, and that he be taken by the sheriff of Kenton county, Ky., and confined in the jail of said county for the space of six hours, or until he signifies his willingness to comply with the request made in the deposition attempted to be taken, as follows: 'Please file official copies of the reports made to your office by Block & Sons as to the amount of liquor which they manufactured and deposited in the bonded warehouses located on their distillery premises from the year 1887 down to the present time, and also official copies of applications made by them to your office, during said time for permission to withdraw such liquors from bond.' Also with the following request: 'Please file official copies of such reports of the United States storekeepers as show the liquors on hand at the warehouses on the distillery premises of the defendants in Carroll county on September 15, 1890, September 15, 1891, November 15, 1892, September 15, 1893, 1894, 1895, and 1896.' "

Afterwards, on June 27, 1899, the said notary public and plaintiff's attorney appeared at petitioner's office to continue his deposition, and the following colloquy took place:

"I call your attention to the opinion of the court rendered April 3, 1899, copy of which has been furnished you, and as to which you have had ample time to be advised fully, and now ask if you will file official copies of such reports of the United States storekeepers, spoken of at the time of the former taking of your deposition, as show the amount of liquor on hand at the warehouses of the defendants on their distillery premises in Carroll county, Ky., on September 15, 1890, September 15, 1891, November 15, 1892, September 15, 1893, September 15, 1894, September 15, 1895, and September 15, 1896, or allow us, on behalf of the plaintiff in this action, access to and inspection of such records or papers for the purposes of taking copies for use on behalf

of the plaintiff as evidence in this action? Answer. I will have to decline, just as I did in the other case, and for the same reason as given in the other case. Q. 24. Please examine the records and reports under your control and in your custody as collector, and state what amounts of liquors were contained in the warehouses owned by the defendants in Carroll county on the following dates: September 15, 1890, September 15, 1891, November 15, 1892, September 15, 1893, September 15, 1894, September 15, 1895, and September 15, 1896. Answer. I decline to answer, for the same reasons as stated before."

Thereupon the notary public, and not the court nor the clerk thereof, issued an order for committing the petitioner to jail. The order was placed in the hands of the respondent, the sheriff of the county, who took the petitioner into custody, and the writ of habeas corpus was applied for and issued.

There is no dispute about the facts, though it may be doubted whether the petitioner's imprisonment was not wholly unauthorized upon the ground that the notary public had no power, under the Kentucky Code, to issue the process under which the arrest was actually made. Sections 535, 538, Civ. Code Prac. But the court will not pass upon that point, inasmuch as all parties desire that there shall be a judicial determination of the very important and interesting questions involved, namely: Was it the duty of the collector of internal revenue to answer the questions propounded, and to give the information or furnish the official copies demanded of him? And has the state of Kentucky, as a litigant in a civil action in her own court, the right to exact it of that officer in such a case?

A question somewhat kindred to these has been passed upon by three different federal courts. All of the cases, however, were different from this in two important particulars: First, that the information in each of them was desired in aid of the criminal laws of the states in regard to the occupation of retailing distilled spirits, as to which some of the facts are required to be made public by section 3240 of the Revised Statutes of the United States; and, second, the latest regulation bearing on the subject had not then been promulgated. In the case In re Hirsch, 74 Fed. 928, Circuit Judge Shipman, of Connecticut, in an elaborate opinion, held that the collector should be compelled to testify. His opinion seems even to go to the extent of holding that the treasury department has no authority of law for making a regulation that would prevent it. The learned judge, in aid of the state court proceeding, seems to have held that the spirit of section 3240 of the Revised Statutes required a construction that would compel internal revenue officers to testify in all cases where information was sought by the state as to who were retail dealers in distilled spirits. If that be correct, it would seem to follow that the same liberality of construction would, on the other hand, require it to be held that the spirit of section 3167 forbids any collector to give the information demanded of the petitioner in cases like this; and, indeed, the public policy of the United States might seem also to require this construction. That section prohibits the collector and other internal revenue officers from disclosing certain information they acquire from visits to distilleries, etc. In a somewhat earlier case (In re Huttman, 70 Fed. 701), Judge Williams, of the district of Arkansas, sitting by designation in Kansas, had expressed

views exactly contrary to the Hirsch Case, though this fact does not seem at that time to have come to the notice of Judge Shipman. In the latest case (In re Weeks, 82 Fed. 729), Judge Wheeler, of the district of Vermont, held, with Judge Williams, that the collector was not required to answer. This conflict of authority seems to make necessary, or at least appropriate, a further examination of the whole subject.

It should not be, and I think never is, the purpose or desire of the federal tribunals to interfere with any of the legitimate functions of the state courts or officers. Indeed, the leaning will be in the other direction. ' Judicial proceedings, federal and state, are essential to the good order of society, and to the protection of the rights of the individual citizen. Those proceedings would often prove abortive, if the courts had not the most extensive powers, as well as full authority to compel witnesses to testify to facts within their knowledge, and, indeed, to produce papers under their individual control in proper cases. This general proposition is certainly true, notwithstanding there are many exceptions to it, notably such as pertain to privileged communications, incompetent testimony, testimony that would tend to degrade the witness or subject him to criminal prosecution, and such as is forbidden by public policy. In this case, if the petitioner had been called to testify only as to facts within his personal knowledge, no law would exempt him from that duty, if what he knew was competent testimony, and its admission was not forbidden by other rules. It is not claimed that any of the information desired at his hands is within his personal knowledge. It is all contained in certain reports made to him by the distillers and by other United States officers, and which are in his possession in his official capacity as an officer of the United States. As it is clear that they are not his private property, it is essential to accurately ascertain the nature of those reports, and his relations to them and his duties respecting them.

In order to obtain money for the support of the government, congress has passed laws for the collection of the revenue to be derived from internal sources. A complete system has been established. It is placed under the treasury department. The secretary of the treasury is its head. It is operated through the bureau of internal revenue, at the head of which is the commissioner. The entire system is under his supervision, but subject to the control of the secretary of the treasury. Section 3301, Rev. St., provides that every storekeeper shall on the first Monday of every month make a report to the collector of the quantity of distilled spirits in the warehouse in his charge; and section 3307 requires that the distiller shall, monthly, make and swear to a report substantially similar. These reports thus made to the collector in the course of administering the laws of the United States, and for this executive purpose alone, are now demanded of him by the state officials in the manner before shown. Under the law, in the exceptional instance of a distiller, the property of the citizen is arbitrarily laid hold of by the United States as soon as it is manufactured, and is kept under its control until the tax is paid, possibly eight years afterwards. Meantime these reports

must be made. So far as the information contained in the reports is obtained from the distiller, it is extorted for the sole purpose of enabling the United States to ascertain and collect from him its revenues. This purpose is all that relieves both this act and that of so long holding his property from being mere tyranny. The information derived from these reports is not obtained for publication in any manner. It is entirely official. Under this state of fact, it does not seem to the court that these reports are in any sense records open to the use of the public. They are the property of the United States, in the custody of its officers. They were exacted for the sole purpose of collecting revenue. It is true that they are property of a peculiar character, but that does not alter the fact. Property is defined as being the exclusive right of control and dominion over a thing, and may include anything that is subject to ownership. Public records and documents are such as are placed on the public files for the use or information of the public, to which the public has access, and of which the public has the right, usually upon payment of certain fees, to demand copies. They are not property, in any ordinary sense. In many cases copies of the public records of the United States may be authenticated by the head of the department or other ultimate custodian. Familiar instances of such public records are those in judicial proceedings, and where documents are required to be registered or recorded, patents for land, and many others. See Boyden v. Burke, 14 How. 575. But there is no statute or law of the United States which authorizes or permits the collector of internal revenue to make or to certify for use by any one else copies of the reports which have been gathered for particular governmental purposes. The United States has not authorized the use of these executive documents by anybody for any purpose, except the official one for which the reports were made. No statute is shown which gives the litigant in this case any right to claim the use of this property—the private property of the United States—for any purpose whatever. The petitioner is the immediate custodian thereof, under the control of his superior officers. They have forbidden him to put this property of the United States to the uses required by the litigant in the state court, and yet the petitioner is arrested for obeying the orders of his superior officers respecting private papers of the government, in which the state of Kentucky has no interest whatever, and over which it has no more lawful control than it has over any other property of the United States. The purpose for which the litigant desires this property cannot affect the question of its right to it. It would not be contended that the state of Kentucky had any right to claim this property or its use, except for the single quality it is supposed to have of silently testifying upon the issues involved in the case against Elias Block & Sons. No logic is perceived in the possible suggestion that that makes a difference in right, though it may make the use more desirable in fact. The state, except so far as it may be given by statute, has no right over the property or the archives of the United States government. No statute is shown to justify the claim now made, though a statute is necessary to make the claim good. No sovereign can claim or obtain the right to demand the use of the

archives or quasi private documents of another sovereign without its consent, expressly given, and public policy forbids that any attempt to extort such use should be encouraged. Most unseemly, not to say dangerous, consequences might otherwise ensue. The state, while it may compel the petitioner, as a mere individual, to tell what he may know in that capacity, has no power to control him as an officer, nor to regulate the conduct of his official duties with reference to these reports nor their contents, as those duties can only be fixed by the laws of the United States and the orders and regulations of his superior officers. Among the official duties thus prescribed for the petitioner in the conduct of his office, and respecting the care of the property of the United States committed to his custody, is that which requires that he shall not do with it what is demanded at his hands in this case.

It may be assumed to be clear that a state statute cannot impose duties upon a federal officer as such. Much less can a state court do so. The attempt to do it in this case through the medium of a process of contempt must fail, because the state shows no statutory right thus to appropriate the property of the United States, nor to impose a duty upon its officers. If it were otherwise, and if the officers of the United States, in the discharge of their duties, could be interfered with by state courts or officers, it might soon produce a state of affairs that would be intolerable. It might, for example, take much of their time, or put them to great expense. If the state courts could for this purpose appropriate this property, or could compel official copies to be made or official information to be compiled, where would the line be drawn? And, vice versa, if the federal authorities or courts could interfere with the duties of state officers, except in those cases expressly authorized by the supreme law of the land, or necessary to carry into effect the laws of the United States or to enforce the judgments of her tribunals. There is no law of the United States which would give the federal authorities power over the property of a state, except occasionally through the writ of ad quod damnum, and through the exercise of the right of eminent domain.

While these views are believed to be correct as to mere property, as distinguished from true public records, as above defined, it probably might not be held that federal courts, on the one hand, and state courts, upon the other, were incompetent to compel custodians of public records either to give copies lawfully demanded upon payment of fees, or else to attend with the records, in proper cases, under a subpœna duces tecum. But this would be upon the ground that they are records to which all the public has the right of access. The right, however, if held to exist, would not extend to another class of papers which the state might own, and which pertained to the conduct of its government, and which its policy has not opened to the public. For example, in the early case of Morris v. Creel, 2 Va. Cas. 49, it was held that a paper submitted to the executive council of Virginia for the purpose of enabling it to perform its executive functions ought not to be withdrawn by the clerk without the order of the council, and therefore no attachment should be awarded against the clerk

for refusing to obey a subpœna duces tecum commanding him to produce the paper to be read in evidence. Every paper in the custody of public officers is not a public record. Some, as in this case, may be mere papers belonging to the United States, as documents pertaining to the administrative affairs of the United States, and as mere property which the United States has obtained for its mere executive purposes, and over which, through its proper agents and officers, it has exclusive control, and which the state cannot demand, for purposes of testimony or otherwise, contrary to regulations made under authority of the federal statutes.

It is altogether correct to say that neither the secretary of the treasury alone, nor the commissioner of internal revenue, with his approval, can make regulations having the force of law, unless authorized to do so by congressional enactment; but it is also believed to be true that sections 161, 251, and 321, together, are ample to authorize the making of the regulations hereinafter set forth. They contain provisions as follows:

By section 161:

"The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use and preservation of the records, papers, and property appertaining to it."

It is provided by section 251:

"The secretary of the treasury * * * shall prescribe rules and regulations not inconsistent with law, to be used under and in the execution and enforcement of the various provisions of the internal-revenue laws; * * * he shall give such directions to collectors and prescribe such rules and forms to be observed by them as may be necessary for the proper execution of the law," etc.

And by section 321 that:

"The commissioner of internal revenue, under the direction of the secretary of the treasury, shall have general superintendence of the assessment and collection of all duties and taxes now or hereafter imposed by any law providing internal revenue and shall prepare and distribute all the instructions, regulations, directions, forms, blanks, stamps, and other matters pertaining to the assessment and collection of internal revenue."

At all events, the following regulations were made, namely:

"Treasury Department.

"Office of Commissioner of Internal Revenue.

"Washington, D. C., April 15, 1898.

"The following regulations are issued as supplementary to the instructions and suggestions contained on pages 41 and 42 of the regulations, series 7, No. 12, revised August 3, 1896: All records in the offices of collectors of internal revenue or of any of their deputies are in their custody and control for purposes relating to the collection of the revenues of the United States only. They have no control of them, and no discretion with regard to permitting the use of them for any other purpose. Collectors are hereby prohibited from giving out any special tax records, or any copies thereof, to private persons or to local officers, or to produce such records, or copies thereof in a state court, whether in answer to subpœnas duces tecum or otherwise. Whenever such subpœnas shall have been served upon them, they will appear in court in answer thereto, and respectfully decline to produce the records

called for, ·on the ground of being prohibited therefrom by the regulations of this department. The information contained in the records relating to special-tax payers, in the collector's office, is furnished by these persons under compulsion of law for the purpose of raising revenue for the United States; and there is no provision of law authorizing the sending out of these records, or of any copies thereof, for use against the special-tax payers in cases not arising under the laws of the United States. The giving out of such records, or any copies thereof, by a collector in such cases, is held to be contrary to public policy, and not to be permitted. As to any other records than those relating to special-tax payers, collectors are also forbidden to furnish them, or any copies thereof, at the request of any person. Where copies thereof are desired for the use of parties to a suit, whether in a state court or in a court of the United States, collectors should refer the persons interested to the following paragraph in rule X of the rules and regulations of the treasury department, namely: 'In all cases where copies of documents or records are desired by, or on behalf of, parties to a suit, whether in a court of the United States or any other, such copies shall be furnished to the court only, and on a rule of the court upon the secretary of the treasury requesting the same.' Whenever such rule of court shall have been obtained, collectors are directed to carefully prepare a copy of the record or document containing the information called for, and' send it to this office, whereupon it will be transmitted to the secretary of the treasury with a request for its authentication under the seal of the department and transmission to the judge of the court calling for it, unless it should be found that circumstances or conditions exist which make it necessary to decline, in the interest of the public service, to furnish such copy.                                       N. B. Scott, Commissioner.

  "Approved:
    "L. J. Gage, Secretary of the Treasury."

Now, as against persons desiring to use the property of the United States, these statutes should be liberally construed ·to preserve that property, and no third person has any right to gainsay it. He has no interest in the property. At all events, it is believed that the statutes and regulations constitute a binding rule for collectors of internal revenue in their control of the governmental property intrusted to their care sufficient to justify them in rendering obedience to their chief, especially as against all outside persons, and also sufficient to excuse them for refusing to permit anybody to use or get the benefit of that property who does not show some positive law of the United States as a basis of a demand for it. Here the state of Kentucky is a litigant only in a civil suit, and it may well be supposed that the general principle that, when a government abandons its sovereignty and becomes a private litigant, it is subject to ordinary rules, should have some application; but, whether so or not, the court is convinced that the state can manifest no right to the papers asked for, except by means of some statutory enactment bestowing it, or through some act of courtesy, as distinguished from a right on the part of the lawful custodian. It is an old rule that one government will not aid another in enforcing its revenue laws. Whether it should be applied to the operations of our state and national governments need not, in the abstract, be considered. Certain it is, however, that no law of the state can be found which is intended to aid the national government in the collection of its revenue, nor can any be found in the statutes of the United States which was intended to assist the states. Whether comity would require such enactment on the part of both need not be considered. The fact remains that such legislation has not been regarded as at all needful or desirable. The United States has a com-

plete revenue system of its own, and equally so has the state. They are, and must necessarily be. entirely independent of each other, though in some respects (notably in the matter of taxing the occupation of a retail dealer in distilled spirits) the statutes of the United States make it plain that by taxing the occupation it is by no means meant to authorize such occupation contrary to local laws. It only intends to tax the occupation if it is in fact carried on, but does not authorize it to be carried on. This is the basis of the provisions of section 3240, as well as section 3243, of the Revised Statutes. And it should not be overlooked that while, by the regulations above given, the treasury officials undertake to control the use of the reports referred to, they do not undertake altogether to deprive litigants of their use as testimony, except so far as the lawful custodian thereof regards it as incompatible with the public interest. While he has the right and the power altogether to exclude others from all use of such property, yet, under certain circumstances, as matter of courtesy, copies of the papers will be furnished. Surely the owner of property or his sole agent may annex conditions to a grant of the use of it. Indeed, there might be many considerations of public policy to support that course in case of merely executive or administrative papers like these,—considerations affecting both the amount and safety of the revenue. Nor is the state of Kentucky powerless. It has its own independent and complete system for taxing distilled spirits. True, the power of the United States is supreme, to the extent of having the first right; but the statutes of the state (sections 4105 to 4114, inclusive, Ky. St.) provide ample machinery for compelling reports from distillers, and, indeed, everything else necessary for the purpose. The state has neither occasion nor right to call upon the United States nor her officers for reports made under the administration of its laws in order to enforce the collection of the state revenue. Nor would the United States have the right to call upon the state. Each government must take care of its own concerns in such matters, and it is much doubted by the court whether the commonwealth of Kentucky or the government thereof in any way really makes or desires to make this claim, although her name is used in the suit in the Carroll county court by the auditor's agent.

It may be added that the court has been influenced somewhat by the conviction that, if the copies of the reports and the desired information were obtained from the collector, they would be altogether inadmissible and incompetent as evidence, and that it would ultimately be so held by the state court. While the collector was practically ordered by the state court to furnish or permit to be taken copies of the reports, or else to compile therefrom the data demanded, there is no law authorizing the collector to authenticate copies of papers, nor to compile figures from them so as to make them admissible as evidence. and the state court cannot impose the duty upon him. He should not be imprisoned because the head of the department will refuse to authenticate them, and a statement by him of what the papers contain, without producing the originals or authenticated copies, would probably be mere hearsay, and by no means the best evidence of their contents. And, if there has been a fishing expedition

merely to get information upon which to base ulterior movements by the plaintiff in the suit, surely the commitment of the petitioner would then be altogether inexcusable

To sum up the whole matter, the court has reached the conclusion: First, that the reports are executive documents, which the United States, in its sovereign capacity, has acquired for the sole purpose of administering its own governmental affairs; second, that the officers of the national government cannot be compelled by another sovereignty to put those documents at its disposal, without some express law of the United States authorizing it; third, that such documents are privileged, and to a certain extent quasi confidential, communications, the use of which is limited to the purposes for which they are made, unless the parties interested consent to a more extensive use (this proposition more especially applies to the reports of the storekeeper); fourth, that any demand for their use by any outside party must depend for success upon the courtesy of the government, and upon its notion as to the public policy of complying with the request; fifth, that no litigant has any right to their use in any other way or upon any other basis than such as may be fixed by the United States or under its authority; sixth, that the reports are property, and their ownership rests in the United States; seventh, that the state of Kentucky, either as a litigant or otherwise, has no right to exercise any control over them, through its courts or otherwise, except as the right may be given by congressional enactment or the courtesy of the government; eighth, that the secretary of the treasury has lawful authority to control or to make regulations for controlling that property and its custody; ninth, that the regulations made were within his authority, and show the only way in which the courtesy of the government respecting the matter in hand will, in the absence of legislation, be exercised, and the courts have no power to overrule it; tenth, that the state court had no lawful jurisdiction, right, or power to impose upon the collector, an officer of another sovereignty, the duty of making copies of the reports, or that of permitting others to take them, or that of compiling information from their contents; eleventh, that the reports are parts of the governmental archives, accumulated through mere executive and administrative processes, and as such are privileged, at least to the extent that no other sovereignty in its own interest can seize or control them for any purpose whatever without the consent of the sovereign owner, lawfully manifested; and, twelfth, that the effort to make the collector testify to their contents is virtually an attempt to compel the United States to produce them. The proposition underlying all the others is that nobody can acquire any control over or right in this class of papers belonging to the United States in any manner, except by its authority. These conclusions seem to be supported by 1 Greenl. Ev. §§ 250, 251; Jones, Ev. § 780; U. S. v. Eliason, 16 Pet. 291; Hagood v. Southern, 117 U. S. 52, 6 Sup. Ct. 608; Ableman v. Booth, 21 How. 506; Cunningham v. Railroad Co., 109 U. S., 451, 452, 3 Sup. Ct. 292, 609; Electoral College Case, 8 Fed. Cas. 427; Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524; Black, Const. Law, 441; Ex parte Reed, 100 U. S. 13; Carr v. U. S., 98 U. S. 433; Virginia Coupon Cases, 114 U.

S. 286, 5 Sup. Ct. 911; In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164.    And, to illustrate further, it may be added, upon the authority of Ex parte Rowland, 104 U. S. 612, that, if a mandamus should be sought in this case, it would not lie, because no statute has ever made it the duty of the collector to do as required by the state.    Of course, it has not, been forgotten nor overlooked that there are cases where the production of private papers in the possession of third persons not parties to the litigation can be exacted, but this is generally where the litigant has a rightful interest in them.    The rule has no application here. 1 Greenl. Ev. § 559; Am. & Eng. Enc. Law (1st Ed.) p. 257.    Otherwise, the party is left to his own resources to obtain the paper, or to lay the foundation for secondary evidence of its contents.    If the litigant has no right in or to the papers in the hands of the third person, nor any legal interest in them, it might possibly violate the fourth amendment of the constitution to force the latter to produce them by an unwarrantable seizure, actual or constructive.    And in another connection, so far as the distillers' reports are concerned, Boyd v. U. S. might again apply.

It seems to the court, upon these considerations, that in refusing the demand made upon him, and for which he is now in custody, the petitioner, an officer of the national government, is discharging a duty imposed upon him by the laws of the United States and by his lawful superior officer, concerning the custody of the executive papers and private property of the United States committed to his official custody; that there is no law making it his duty to do otherwise than he did; and, therefore, that he is in the custody of the respondent in violation of the laws of the United States and of his rights thereunder, and should be discharged therefrom.

An offer was made to prove that it had been the custom of collectors, with the consent of the distillers, to give the desired information. The court held that such testimony, being objected to, was wholly immaterial, and could in no wise affect a case where neither the collector nor the distiller consented, and where the secretary and commissioner forbade.    The petitioner is discharged.