In re VALECIA CONDENSED MILK CO. In re FOOTVILLE CONDENSED MILK CO. MYRLAND v. WARNER et al.

(Circuit Court of Appeals, Seventh Circuit. February 6, 1917.)

No. 2387. ·

1. WITNESSES ☞216—PRIVILEGE—PRODUCTION OF DOCUMENTS—TAX STATEMENTS—VALIDITY OF STATUTES.

The federal and state governments have power to provide that returns made to their officers to be used in assessing and collecting revenue and taxes shall not be revealed by the officers, and such provisions protect the officers against commitment for contempt for refusal to produce such returns on subpœna by a court.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 779.]

2. WITNESSES ☞216—PRIVILEGE—PRODUCTION OF DOCUMENTS—TAX STATEMENTS—CONSTRUCTION OF STATUTES.

In St. Wis. 1915, § 1087m24, providing that no commissioner, clerk, or agent shall divulge in any manner, except as provided by law, any information obtained in the discharge of his official duties, or permit any income return to be seen or examined, except as provided by law, the exception does not permit the production of papers whenever required through the processes of law, which would deny their inspection only by those whose motives were idle curiosity, and would violate the plain public policy of the statute to protect such returns, in order that they may be freely made, but the exception refers only to the production of papers before other bodies or in other proceedings relating to the assessment of the tax.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 779.]

3. WITNESSES ☞216—PRIVILEGE—PRODUCTION OF DOCUMENTS—BANKRUPTCY ACT.

Bankr. Act July 1, 1898, c. 541, 30 Stat. 544, does not require the rules of evidence in proceedings thereunder to be different from such as generally prevail, and does not deprive a witness of his privilege under a state statute to withhold income tax returns by the bankrupt.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 779.]

Petition to review and revise an order of the District Court of the United States for the Western District of Wisconsin.

In the matter of the bankruptcy proceedings of the Valecia Condensed Milk Company and of the Footville Condensed Milk Company. Petition by A. J. Myrland against Paul S. Warner, as trustee, and others, to review an order of the District Court committing petitioner for contempt for refusing to produce certain documents in response to a subpœna duces tecum. Order reversed, and rule against petitioner to show cause discharged.

In the bankruptcy proceedings of two bankrupt corporations, petitioner, the secretary of the Wisconsin tax commission, was served with a subpœna to appear before the referee to testify, and there to produce all reports, correspondence, certificates, and documents in possession of the commission relating to the bankrupts, and of another corporation, also a bankrupt. He appeared and testified that the only papers of the kind mentioned in the subpœna in the possession of the commission were the income tax returns of such respective corporations, as were made and returned to the state tax commission in pursuance of the statute of the state, and that the statute prohibited him from permitting such income tax returns to be examined by any

person, and he refused to produce them. Thereupon his refusal was reported to the court, and a rule was entered requiring him to show cause why he should not be held in contempt. In his answer to the rule he again set up the inhibition of the Wisconsin statutes against producing such income returns, and asked to be excused from producing same. The court held him guilty of contempt, and ordered him committed until he should produce the returns. The petition to review and revise the order of the District Court raises the question whether the court has power to compel the production of such income returns.

The Wisconsin statute (section 1087m1 et seq.) requires corporations annually to make out and present to the tax commission a return under oath, answering all questions propounded by the commission with reference to the corporate affairs for the year preceding, for the purpose of enabling the commission to assess the annual income tax which the corporation is by statute required to pay. The act[1] (set out in the margin), under which the particular question here arises, provides that no commissioner or clerk or agent shall divulge or make known to any person "in any manner except as provided by law" any information obtained in the discharge of official duties, or permit any income return to be seen or examined "except as provided by law;" and that any such officer, etc., violating such provision shall be fined from $100 to $500, or imprisoned not exceeding 2 years, and shall forfeit his employment, and for 3 years thereafter be incapable of holding public office.

E. E. Brossard, of Columbus, Wis., for petitioner.

John B. Sanborn, of Madison, Wis., for respondent.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] 1. It will be well first to consider how such provisions against the production of papers have generally been considered by the courts. We have been referred to no adjudication, and we find none wherein this statute, or any income tax statute, has been considered with reference to the question here involved. But decisions under federal revenue law, other than the income tax law, respecting the production of papers and the revealing of information received in the course of official duty by revenue officers, are closely analogous.

Section 3167, Rev. Stat. (Comp. St. 1913, § 5887), was directed against divulging or making known in any manner not provided by law "the operation, style or work of apparatus of any manufacturer or producer visited by" an official in discharge of his official duties; and

[1] "Penalty for divulging information (section 1087m24):

"1. No commissioner, assessor of incomes, deputy, member of a county board of review, or any other officer, agent, clerk or employé shall divulge or make known to any person in any manner except as provided by law any information whatsoever obtained directly or indirectly by him in the discharge of his duties or permit any income return or copy thereof or any paper or book so obtained to be seen or examined by any person except as provided by law.

"2. Any officer, agent, clerk or employé violating any of the provisions of this section shall upon conviction thereof be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail for not less than one month nor more than six months, or by imprisonment in the state prison for not more than two years, at the discretion of the court.

"3. Such officer, agent, clerk or employé upon such conviction shall also forfeit his office or employment and shall be incapable of holding any public office in this state for a period of three years thereafter."

in 1894 this section was amended to include in the inhibition, income returns under the federal income tax act which was passed at that time. But returns and other papers as to special taxes, apart from the income tax, were not included in the terms of the statute.

The revenue act provided that the Secretary of the Treasury was authorized to prescribe regulations not inconsistent with law, for the government of his department, and the custody, use and preservation of its records and papers. Rev. St. § 161 (U. S. Comp. St. 1916, § 235). On the subject of producing such papers in court it does not appear that prior to 1898 any general order or regulation was made by the Secretary of the Treasury, but prior to that year letters had been written by the Commissioner of Internal Revenue to two internal revenue collectors stating that any and all such papers and information in their possession were not to be revealed or produced in any court or elsewhere.

In re Weeks (D. C.) 82 Fed. 729, was a proceeding by habeas corpus in the district court to obtain the discharge of a collector of internal revenue from commitment for contempt of the state court, for refusing to obey a subpœna requiring him to produce in that court certain records of his office. The refusal to produce was justified by one of the letters above referred to wherein the Commissioner of Internal Revenue had instructed him not to produce papers or give information concerning matters in his office. The court held that such evidence was in control of the federal government, and that the instruction to the collector by his superior officer protected him in his refusal and he was ordered discharged.

In re Huttman (D. C.) 70 Fed. 699, the circumstances were similar to those in the Weeks Case. The petitioner for habeas corpus there stated that he had been instructed by the head of his department to decline to make the requested revelation of facts which came to him in his official capacity as collector of internal revenue. The fact of such instruction was uncontroverted. The petitioner there, who stood committed by the state court for his refusal to make such revelation, was discharged.

The case mainly relied upon in support of the action of the District Court is In re Hirsch (C. C. 1896) 74 Fed. 928. There it was undertaken in a proceeding in a state court to compel the production under subpœna duces tecum of an application or return to an internal revenue collector, whose deputy in charge of the papers was committed for refusing production. On habeas corpus the District Court dismissed the writ, holding that the federal court was without jurisdiction, as the refusal to produce was not under a statute of the United States, but under an alleged regulation claimed to have the force of law. The court concluded that the two letters of the commissioner of internal revenue to revenue collectors of other revenue districts, instructing them to refuse production of any such papers, did not amount to a regulation, and that there was in fact no regulation of the department preventing the production of such papers. The Circuit Court of Appeals, Second Circuit, affirmed the judgment, but rendered no opinion beyond a statement per curiam of concurrence in the opinion of the

District Court, and that they did, not intend to decide that a writ of habeas corpus is the proper remedy to review a judgment of state court committing a witness for disobedience of its subpœna. 87 Fed. 1005, 31 C. C. A. 350.

It seems that in 1898 a general regulation was promulgated by the Department forbidding the production of any such documents, and giving out any such information; and presumably, had there been such general regulation when In re Hirsch was decided, that case would have been otherwise determined, for it is there said:

"It is probable that a statute could declare that communications of taxpayers to a board of assessors or officers of a similar character should be privileged, and that no returns can be examined by any one, or be reached for examination by legal process."

Since the regulation was promulgated the right to compel internal revenue officers to produce official papers in their custody, under subpœna from court, or to give testimony of what so came to their official knowledge, has been uniformly denied. In re Lamberton (D. C.) 124 Fed. 446; Stegall v. Thurman (D. C.) 175 Fed. 813; In re Comingore (D. C.) 96 Fed. 552; Boske v. Comingore, 177 U. S. 459, 20 Sup. Ct. 701, 44 L. Ed. 846.

In re Comingore involved a habeas corpus in the District Court to release a collector of internal revenue in custody in the state court for refusing to produce certified copies of distillers' reports made to his office pursuant to the revenue laws of the United States, such copies to be used as evidence in a proceeding pending in a court of the state. The court held that such reports are executive documents, which the United States in its sovereign capacity required for administering its governmental affairs, and that no one can acquire control over or right in them in any manner except by its authority. The collector being discharged from custody, appeal was taken, and under the title "Boske v. Comingore" the case is reported in 177 U. S. 459, 20 Sup. Ct. 701, 44 L. Ed. 846. In affirming, the Supreme Court said:

"The papers in question, copies of which were sought from the appellee, were the property of the United States, and were in his official custody under a regulation forbidding him to permit their use except for purposes relating to the collection of the revenues of the United States. Reasons of public policy may well have suggested the necessity, in the interest of the government, of not allowing access to the records in the offices of collectors of internal revenue, except as might be directed by the Secretary of the Treasury. The interests of persons compelled, under the revenue laws, to furnish information as to their private business affairs would often be seriously affected if the disclosures so made were not properly guarded."

The rule is the same in Wisconsin. In a suit involving a fire loss on cigars and tobacco, one of the parties sought to compel a revenue officer to testify as to contents of books of the federal internal revenue collector, showing entries which might have bearing on the question there at issue. The officer testified it was contrary to his instructions to supply such information, and the Supreme Court said:

"A litigant has no right to use such record upon any other basis than such as may be fixed by the United States or under its authority. Under the laws of the United States and the rules and regulations made in pursuance thereof,

the officers of the departments could not be compelled to produce the books in evidence or disclose their contents, and they were not admissible, except in the manner provided by the department." Meyer v. Home Ins. Co., 127 Wis. 293, 304, 106 N. W. 1087, 1090.

A case quite analogous, in that it arose out of an attempt to compel a tax officer to reveal to the bankrupt court information which came to him officially, is In re Reid (D. C.) 155 Fed. 933. It appears that the president of the board of assessors of the city of Detroit was called as a witness, and was asked to produce a certain tax statement filed by the bankrupt. He refused, on the ground that the statutes of Michigan provided that no such statement shall be used for any other purpose, except the making of the assessment for taxes. The bankrupt gave his consent to the production. The question of the right to compel the production was certified to the District Court, which, deciding against the right to compel the production, said:

"The purpose of the provisions of section 3846 is plainly to promote the collection from each taxpayer of his just share of state, county, and municipal taxes, and to that end to require from each property owner the full dis-' closure of all his taxable property under the state's pledge that the statement shall be kept inviolate, save to the officials for whose information and guidance it was made. To permit that information to become public would defeat the plain purpose of the statute by deterring the taxpayer from revealing what frequently could not be learned from any other source. * * * To sanction the violation of that pledge by denying the taxpayer the protection of the statute would invite refusals to obey the law, evasions, and perjury, often injuriously affect the interests of the taxpayer, would obstruct the collection of taxes, and diminish the revenues of the state. The power of the Legislature to prevent these consequences is unquestionable. The wisdom and policy of the act must be conclusively assumed. Its meaning is unequivocal, and needs no construction."

[2] 2. But the contention is made that the words "except as provided by law" in section 1087m24, must be construed as excluding from the inhibition of the act the production of such returns when required through the processes of the law. In other words, that "provided by law" means when required by subpoena duces tecum, replevin, order to produce, or other manner or means whereby a court or any other authorized tribunal or functionary may require and compel the production of papers. The very statement of the proposition induces rather the conclusion that against this the inhibition was in the main directed.

It is scarcely presumable that inspection was thus intended to be denied to those only who seek it out of idle curiosity; or that it was the intention to permit such papers to be made public only at the behest of litigants, and not of nonlitigants, who may be not less interested in seeing them, but not being in litigation, may not invoke legal processes to compel their production.

Without in any degree trenching upon the essential and full power of courts to compel the production of papers, we must recognize also the generally declared public policy against revealing such returns— made, as they are, under compulsion of law, for the particular purpose of taxation; a public policy repeatedly recognized by the courts. With an enactment such as the one in question, directed against the

production of these returns, it is not lightly to be presumed that the public policy manifested by such statute was intended to be practically neutralized by the excepting words.

In order to reach the conclusion that the words do not have reference to subpœnas and other processes of law for compelling production of papers, it is not necessary that it be pointed out to what they do refer. However, the Income Tax Act itself contains provisions apparently well within the purview of the exception. Section 1087m10 (1) provides that the income assessment of individuals be made by assessors of income who are constituted by the tax commission, and that of corporations, by the commission itself. Section 1087m17 provides that persons aggrieved by the assessment of the income assessor may have the assessment reviewed by the county board of review, and section 1087m19, that any person dissatisfied with the decision of this board may appeal to the state tax commission. Section 1087m13 makes provision for appeal by corporations from their income tax assessments made by the commission. Section 1087m29 authorizes the state tax commission to employ clerks and specialists necessary to make effective the act. Without the exception the letter of the section would prevent any one into whose hands the returns first came from showing or delivering them to these others who are by the law charged with duties which require the presence of the returns or information of what they contain; and it is reasonable to conclude that the exception was intended to include such delivery or revelation only as is thus made necessary in the administration of the income tax law.

[3] 3. Respondents contend that the Bankruptcy Act unqualifiedly provides for the production of papers and the giving of testimony, and that act is paramount to any limitations or restrictions imposed by the state, and the bankruptcy courts cannot be hampered thereby. We find nothing in the bankruptcy act or in its administration requiring the rules of evidence applicable to proceedings thereunder to be different from such as generally prevail. No such distinction was recognized in Re Reid, supra.

It follows, and the order of this court is, that the order of the District Court adjudging petitioner to be in contempt be reversed, and the rule against petitioner to show cause be discharged.