### ALVORD v. UNITED STATES.

1. The presentation of a claim for compensation for carrying the mails, to the Second Assistant Postmaster-General, with whom all the business in relation to the claim had been previously transacted, is, in contemplation of law, the presentation of it to the Postmaster-General.
2. The facts in this case considered, and held to entitle the claimant to $35,100 for his services, under contracts with the Post-Office Department, for carrying the mails.

APPEAL from the Court of Claims.

The facts are stated in the opinion of the court.

*Mr. Thomas Wilson* and *Mr. Jeremiah M. Wilson* for the appellant.

*The Solicitor-General, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

It appears by the findings of the Court of Claims, from whose judgment this case is appealed, that, by five different written contracts made in 1858, appellant agreed with the Postmaster-General to carry the mail over as many different routes between Iowa City, in the State of Iowa, and Fort Kearney, in Nebraska.   On the 25th of July, 1861, it was agreed between him and the Postmaster-General, that, for an improved service on part of this route, namely, between Omaha on the Missouri River; and Fort Kearney, plaintiff should receive $14,000 per annum additional, from its commencement on the 5th of August, 1861.   The second and third of the series of facts found by the court we give verbatim, as follows : —

"2. On the 16th of September, 1861, in consequence of the route established by Congress for the through California mail having been broken by the burning of bridges, the Postmaster-General ordered

the California mail to be sent over claimant's routes; and the claimant transported it under and in pursuance of such order from the 16th of September to the 25th of December, 1861. It greatly exceeded in bulk the other mail matter which the claimant transported under his contracts, and on some of his routes required for its conveyance at times as many as five coaches per day in addition to the one coach which he would otherwise have run, and it at all times and on all of his routes required one or more additional coaches, which were used exclusively for it; and the fair and reasonable value of the service for the period named was the sum of $35,100.

" 3. Immediately after the claimant's services for carrying the California mail, as set forth in the second finding, had terminated, he presented his account therefor to the Postmaster-General, and requested that it be liquidated and paid, but the Postmaster-General refused to allow or pay the same, and directed the Second Assistant Postmaster-General to reply, 'that, when he made the arrangement to give him the $14,000 per annum additional for improved service between Columbus and Fort Kearney, it was in view of his conveying the overland mails over that route and through Iowa free of additional expense, should circumstances make it necessary temporarily so to send them; and that if the claim for additional compensation for such service is to be pressed, he would feel compelled at once to annul that arrangement.' The Second Assistant Postmaster-General reduced such instructions to writing, in the form of a letter from himself to the claimant, and caused it to be mailed to the claimant at his residence in Indianapolis, Indiana. Subsequent to the mailing of such letter, and while the additional mail service at $14,000 per annum was still being rendered, the claimant presented documents to prove the justice of his claim for conveying the California mail, and otherwise pressed his demand by personal interviews with the Second Assistant Postmaster-General, with whom all of the business relating to this claim had previously been transacted. He did not otherwise notify the Postmaster-General that his claim for the California mail service would be pressed. The Second Assistant Postmaster-General did not inform the Postmaster-General that the claimant thus pressed his demand for the California mail service. The claimant continued to run a daily mail between Omaha and Fort Kearney, and to receive the consideration at the rate of $14,000 per annum, from the 12th of February, 1862, when the Postmaster-General's decision was made, up to the termination of the original contract on the 30th of June, 1862."

On the facts thus found, the court was of opinion that the law was for defendants, and dismissed appellant's bill.

The ground assumed by the majority of the Court of Claims is, that by continuing to perform the services for which the $14,000 extra was allowed, and receiving the pay for it, after receipt of the Postmaster-General's letter, he waived his right to insist on the $35,100 which that court find was otherwise justly his due.

The Solicitor-General takes another view of the matter, and insists that Alvord did not press his claim after the receipt of that letter ; and for that reason, and by continuing the $14,000 contract, must be held to have waived his claim to the $35,100.

Neither of these views seem to us to be sound. The court below distinctly states that after the date of the letter from the Second Assistant Postmaster-General, in which it was stated that the arrangement for additional compensation under the $14,000 contract would be annulled if the other claim was pressed, "the claimant presented documents to prove the justice of his claim for carrying the California mails, and otherwise pressed his demand by personal interviews with the Second Assistant Postmaster-General, with whom all the business relating to this claim had previously been transacted."

It is difficult to see how he could more actively have pressed his claim in that department; and it cannot be admitted that it was not pressed, because the evidence and the arguments were presented to the assistant instead of the head of the department. We suppose that the assistant postmasters-general were appointed for precisely such functions as this one discharged in the matter, and it would be a dangerous principle to hold that the department is bound alone by what is transacted by the Postmaster-General in person ; for the same rule would free parties dealing with the department from obligations not assumed directly with its head.

Considering, then, that Alvord did press this claim, how can he be said to have waived it ? The Postmaster-General's statement was, that if you press this claim, I shall be compelled to abrogate the other. If he had abrogated the other, the correspondence might have been a sufficient justification for so doing. If this suit had been brought to recover under the $14,000

contract, what took place might have shown some reason against a recovery. But it is clear, from all the facts found, that the department, although Alvord did press his claim for carrying the California mail earnestly and without remission, did not choose to exercise its option or execute its threat to discontinue the other arrangement, but permitted it to stand, probably because the good of the service required it. Instead of that, it concluded to resist the present claim.

The correspondence with the Postmaster-General, therefore, does not affect the merits of this claim; and as the findings of the court show a case in which the fair and reasonable value of the additional service rendered under the peremptory order of the Postmaster-General by the claimant was $35,100, we see no reason why he should not have recovered it. At the time he made his original contracts they were for a certain number and character of coaches for so many days in the week. The California mail was then carried by sea. Later, it was carried to St. Joseph, on the Missouri River, two hundred miles south of claimant's route, by rail, and then overland by another contractor. This mail exceeded all the other mail matter which he was expected to carry, and did carry, under his original contract; and it was only in consequence of the destruction of the railroad bridges in Missouri by the guerilla warfare of the early days of the insurrection that the whole of that mail was ordered to be carried temporarily over claimant's lines through the State of Iowa.

If this mail could have been carried by the same number and character of coaches run for the same number of days in the week, which were stipulated in his contracts, perhaps no additional compensation would have been due. But the court distinctly finds that under the order, which he had no right to resist, he was compelled to put on five additional coaches per day on some of his routes, and at all times and on all his routes one or more additional coaches were used exclusively for the increased mail. For this service, altogether beyond what his contract required of him, he is entitled to compensation on every principle of law and justice.

> *Judgment reversed and cause remanded, with directions to render a judgment for the plaintiff for $35,100, the value of his services, as already found by the Court of Claims.*