## In re WEEKS.

(District Court, D. Vermont. October 6, 1897.)

1. INTERNAL REVENUE—COLLECTORS AS WITNESSES IN PROSECUTIONS UNDER STATE LIQUOR LAWS.

An instruction issued by the commissioner of internal revenue, directing collectors and their deputies to refuse to produce, in criminal prosecutions of liquor dealers in the state courts, the returns made to the collectors, or the lists showing payments of federal liquor taxes, or to give information derived from official sources as to the fact of such payments, is valid,

and in accordance with the federal laws. Rev. St. U. S. §§ 251, 321, 3238–3240, 3244.

**2. SAME.**

A state has no right to federal instruments of purely federal character for proof, unless they are left within its reach.

This was a proceeding in habeas corpus in behalf of Arthur L. Weeks, who was imprisoned under a commitment for contempt by a state court of Vermont for refusal to produce evidence in relation to the payment of United States liquor taxes.

John H. Senter, for relator.

Fred A. Howland, for the State of Vermont.

WHEELER, District Judge. The laws of the United States provide that the secretary of the treasury shall prescribe "rules and regulations not inconsistent with law, to be used under and in the execution and enforcement of the various provisions of the internal revenue laws," and "give such directions to collectors, and prescribe such rules and forms to be observed by them, as may be necessary for the proper execution of the law" (Rev. St. § 251); that "the commissioner of internal revenue, under the direction of the secretary of the treasury, shall have general superintendence of the assessment and collection of all duties and taxes, now or hereafter imposed by any law providing internal revenue, and shall prepare and distribute all the instructions, regulations, directions, forms, blanks, stamps, and other matters pertaining to the assessment and collection of internal revenue" (section 321); for a special tax on, among others, retail dealers in liquors (section 3244); to be paid by stamps (section 3238); that collectors shall place and keep in their offices, for public inspection, an alphabetical list of the names of all persons who have paid such special taxes within their districts, with the time, business, and place of business for which such taxes have been paid (section 3240); that every person engaged in such business shall place and keep conspicuously in his establishment or place of business all stamps denoting the payment of such tax (section 3239). The laws of the state provide for punishing common liquor sellers, and for abating and enjoining places of sale as common nuisances, and that "the payment of the United States special tax as a liquor seller shall be held to be prima facie evidence that the person paying the same is a common seller, and the premises so kept by him are a common nuisance." V. S. § 4476. The collector's office for this district is kept at Portsmouth, N. H. The commissioner of internal revenue, presumably with approval of the secretary of the treasury, issued on March 31, 1888, instructions to this collector, containing, among others, these, which have not been modified, but rather extended:

"A special taxpayer is required, under severe pains and penalties, to make his return under oath. The information is extorted from him. It is largely in the nature of a privileged communication, which he is required to make to the revenue officer, for revenue purposes, and for those alone. It is not believed the courts will require a disclosure of evidence thus obtained for use in a criminal prosecution of him who furnished it. It is respectfully insisted that neither the return itself, nor information derived from it, should be admitted on trial, especially if objected to by the accused."

In the case of Gardner v. Anderson (U. S. Cir. Ct. D. Md., before Judges Bond and Giles) 22 Int. Rev. Rec. 41, Fed. Cas. No. 5,220, although the point involved was as to official communications between officers of the government, the court made a remark which is applicable to the question now under consideration, viz.:

" 'That the communication was in its nature an official communication, relating to public business, which it was sought to prove by means of a witness whose only knowledge of it was derived from his official employment, which was contrary to public policy, and not to be permitted.' You and your deputies should, of course, respond to the subpœnas of the court, but you should respectfully decline to produce either the alphabetical list or the returns on Form 11." 34 Int. Rev. Rec. 261.

The relator is deputy collector in Vermont, and was summoned to attend as a witness at the trials of several persons in a court of this state for selling liquor, and to produce and exhibit all books and papers in his possession showing, or tending to show, that the respondents had paid any special tax for the sale of liquors in 1896 or 1897 at Montpelier. These instructions had been furnished to him by his superior for his guidance. In the trial of one respondent he was asked whether the respondent had ever paid him any money for the purpose of obtaining a retail liquor dealer's special tax stamp, and answered that he could not remember, but supposed he had means of ascertaining; whereupon he was asked to ascertain and state the fact, which he declined to do, because his means of knowledge of it had come to him solely in his official capacity, and of the instructions from the treasury and internal revenue department, and for this refusal he was adjudged guilty of contempt. This writ is brought for relief from commitment on this judgment. That the national and state governments have each a separate jurisdiction for their operations, although within the same territory, seems to be well and clearly shown in many cases in the supreme court of the United States whose authority must be paramount; and especially by In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, where the relator was released from a charge of murder in a state court for a killing done in protecting a United States judge traveling on his official business. This killing was held to be as much without the jurisdiction, although within the limits, of the state, as if it had been done without its limits. The federal government could doubtless lay these internal taxes upon liquor dealers, and provide for their collection by collectors and deputies, or otherwise, and by methods, open or secret, accessible or inaccessible, or accessible only in prescribed ways, for evidence in its own or the state courts. It did provide that the fact of the payment of the tax should be open to all, and that proof of it should be accessible to all by examination of the authentic alphabetical list of the taxpayers and their places of business, for public inspection, in collectors' offices, and by the stamps conspicuously to be kept by sellers in the places of business. The provision of these open and convenient methods of proof of this fact somewhat excludes the use of any government agencies otherwise for that purpose. The federal law is to be resorted to for ascertaining whether the instructions or directions are contrary to law; and they do not appear to be in any respect opposed to it, but rather to be in accord-

ance with it. The relator, as federal officer, was in duty bound to obey them. This fact of payment of the special tax, of which the federal law provides such convenient proof, is exactly what the state statute makes evidence of being a common seller, and of keeping a nuisance. When the state lays hold of a federal officer, and his doings as such, for proof contrary to his duty in respect to the tax, instead of resorting to the evidence provided by that government, it interferes with the lawful operations of the federal government in laying and collecting its taxes. The federal government cannot dictate as to evidence in state courts, but it cannot be required to provide evidence for them; and the state has no right to federal instruments of purely federal character for proof, unless they are left within its reach, and these are not, but are put without that reach. This is somewhat as if a federal district attorney or grand juror should be imprisoned to compel disclosure of proceedings before the grand jury, which might be very material in a trial elsewhere. This disclosure would be contrary to legal duty, as that would be, and such imprisonment would seem to be quite clearly contrary to the laws of the United States.

This case differs from In re Hirsch, 74 Fed. 928, in respect to the proof required, and the regulations, instructions, and directions shown, where the relator was remanded, and is similar to In re Huttman, 70 Fed. 699, where the relator was discharged.