## CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Charlie W. Rasnake

### Case No. F-78-2051

By JUDGE EDWARD L. RYAN, JR.

December 14, 1978

This matter came on before the court on defendant's (1) motion to dismiss indictment pursuant to Rule 3A:12; (2) motion for bill of particulars; and (3) motion for discovery of all exculpatory material and information and for discovery and inspection. The motion to dismiss may be treated under the following headings.

*Error in Citation of Statutes*
*In the Indictments*

At hearing, the Assistant Commonwealth's Attorney explained that the Code sections cited in the indictment were those in existence at the time of the alleged commission of the offenses.

In any event, under Rule 3A:7 any error in the citation of a statute shall not be grounds for dismissal,

unless the court *finds* that the error prejudiced the accused. Also, under Rule 3A:8 the court may permit amendment of the written charge.

## Embezzlement From Owners

Defendant complains that the indictments fail to specify the true owners of the property; and that Lambert's Point Docks, Inc., was, at most, a mere bailee of the property allegedly embezzled. The Commonwealth responds, sufficiently, that this supposed error is cured by Code Section 19.2-284. See also *Latham* v. *Commonwealth*, 184 Va. 934 (1946).

## Failure to Specify Dates

The indictments charge that on a certain specific date, and for a specific period of months prior thereto, the alleged crimes were committed. Defendant contends that this does not provide him with sufficient notice.

Unquestionably, indictments must recite that the offense was committed on or about a certain date; however, flexibility is permitted and the indictment is not defective if it omits to state, or states imperfectly, the time the offense was committed, unless time is of the essence of the offense. Code § 19.2-226(6). Indeed, the Commonwealth may prove the commission of the crime charged on a date different from that alleged, and still sustain a conviction. *Passanello* v. *Commonwealth*, 206 Va. 640 (1965); *Parish* v. *Commonwealth*, 206 Va. 627 (1965). In *Waitt* v. *Commonwealth*, 207 Va. 230 (1966), defendant was charged with the rape of a young girl within a sixteen-month period; the bill of particulars stated that the offense occurred between one and three o'clock on a Sunday afternoon in the month of either January or February 1964. *Held*, offense sufficiently charged and indictment valid.

A totally accurate allegation of the time of the offense is not required, if the accused is sufficiently apprised of the offense charged against him.

## Place of Offense

The exact place of an offense need not be stated

except to show the jurisdiction of the court. *Anderson v. Commonwealth*, 100 Va. 860 (1902).

## Quantities and Values Of The Property in Question

The defendant is not entitled to seek and secure purely factual information in the nature of evidence on a motion for a bill of particulars. The function of such a bill is to supply additional information concerning an *accusation.* "The decisive consideration in each case is whether the matter claimed to be left out of the indictment has resulted in depriving an accused of a substantial right *and subjects him to the danger of being tried upon a charge for which he has not been indicted." Tasker v. Commonwealth*, 202 Va. 1019 (1961).

Prior to the adoption of the discovery procedures in the Rules of Court, many litigants, civil as well as criminal, attempted to secure *evidence* on a motion for a bill of particulars. This was never allowed; all that was ever granted was a recital of general particulars that stated a cause of action.

Although failure to show quantities and values *at trial* may be material, it is not now a fatal defect requiring dismissal of the indictments.

## Discovery

More difficult questions arise upon consideration of defendant's motions for discovery in which he asks:

1. All information of whatever form that "tends" to exculpate him by an indication of his innocence, or through the impeachment of any of the Commonwealth's witnesses even if only credibility is affected.

2. All information of whatever form that "leads" to evidence which "tends" to exculpate him by indicating his innocence or impeaching credibility of Commonwealth witnesses.

3. Permission to inspect all books, papers, documents, tangible objects, building or places in the control of the Commonwealth, including statements by witnesses to Norfolk and Western Railway or Lambert's Point Docks or U.S. Customs Service and other internal documents made by and between the agents of the aforesaid entities.

4. To inspect all written or recorded statements or confessions made by him in the possession or control of the Commonwealth, including but not limited to statements or recordings made to or by the office of the Commonwealth's Attorney, Ryland Raymond Porter, Elwood Kelly and John Blaski.

## Concessions

The Commonwealth:

1. *Agrees* to furnish defendant with information that tends to exculpate him and which is in the control, custody or possession of the Commonwealth's Attorney.

2. *Agrees* to furnish information that will affect credibility of Commonwealth witnesses, *if* the witness is a material witness on a key issue and *if* the impeaching evidence is of such character as to raise reasonable doubt as to defendant's guilt.

3. *Agrees* to permit defendant to inspect and copy books, papers, documents, etc., in its possession, custody or control, *if* they are material to the preparation of the defense of defendant, and *if* request is reasonable.

4. *Agrees* to permit defendant to inspect and copy any written or recorded statements of defendant, (as provided for and *limited* by Rule 3A:14(c)(1), (2)).

## Refusals

The Commonwealth:

1. *Denies* responsibility to provide defendant all information of whatever form, source or nature that leads to evidence that tends to exculpate him or affect credibility of Commonwealth witnesses.

2. *Denies* responsibility to permit defendant to inspect or copy witnesses' statements made to agents of Norfolk and Western, Lambert's Point Dock and U.S. Customs or other internal documents made in connection with the investigation of the case.

3. *Denies* responsibility to permit defendant to discover or inspect statements made by Commonwealth witnesses. (Citing Rule 3A:14(b)(2).)

## *Who Shall Review?*

It appears to the court that the paramount issue concerns the question as to who shall make the decisions as to what shall be afforded to the defendant that is in the control of the Commonwealth's Attorney.

From the Concessions and Refusals, noted above, it will be seen that defendant will be granted access to evidence, subject to certain limitations and reservations that border almost on nuances.

The court takes it that:

1. The Commonwealth will provide defendant with information that tends to exculpate him, *but* will not provide "all information of whatever form, source or nature (tending) to exculpate him."

2. The Commonwealth will furnish information affecting credibility of Commonwealth witnesses, *if* it involves a material witness, *if* on a key issue, and *if* impeaching evidence will raise a reasonable doubt as to defendant's guilt.

3. The Commonwealth will permit inspection of documents, etc., *if* they are material for preparation of the defense, and *if* request is reasonable.

4. The Commonwealth will permit inspection of written or recorded statements of defendant, *if* not proscribed by the numerous limitations set out in Rule 3A:14(c)(1), (2).

(The Commonwealth adamantly refuses to permit inspection of witnesses' statements made to agents of Norfolk and Western, Lambert's Point Dock and U.S. Customs and any other internal documents of said units; and refuses inspection of statements made by Commonwealth witnesses, apparently meaning statements made by witnesses to *agents* of the Commonwealth. Rule 3A:14(b)(2).)

Again, who should decide the "nuances." The Commonwealth's Attorney says that he is the best candidate for this awesome office; defense counsel represents that he is the best one to sit in judgment. The court agrees with neither.

In the cases cited to the court by counsel it will be found that the abuses were discovered *after* indictment, arraignment, trial, and in some instances, final judgment. We should not ponder the question as to how many like instances have occurred that went *undiscovered*.

A number of the cited cases recognize, or suggest, the need for *in camera* inspection of the evidence by the court. Rule 3A:14(f) provides for protective orders and authorizes the court to make "such other order as is appropriate." Also, on motion and showing the Commonwealth may submit "a written statement to be inspected by the court in camera." If the court denies discovery "the entire text of the Commonwealth's statement shall be sealed and preserved. . . (and) made available to the appellate court in the event of an appeal by the accused."

Is the written statement of the Commonwealth a mere unsupervised summary prepared solely by the Commonwealth's Attorney? If so, then should judgment be reposed, unfettered, in *one* of the advocates? Or should such statement be considered or compared by the court, *in camera*, with its own contemporaneous review of the entire file of the prosecution?

Some courts hold that a court *should* examine *in camera*: *Mahle* v. *State*, 371 P.2d 21 (Alaska 1962); *Re Walterus*, 397 P.2d 1001 (Calif. 1965); *State* v. *Roy*, 183 A.2d 291, (Conn. 1962) (dictum); *People* v. *Hartgraves*, 202 N.E.2d 33, cert. den., 380 U.S. 961 (Ill. 1964); *Comm.* v. *Carey*, 191 A.2d 730 (Pa. 1963); *State* v. *Martel*, 177 A.2d 236 (Vt. 1962); *Roach* v. *Comm.*, 507 S.W.2d 154 (Ky.); *State* v. *Gruvau*, 141 N.W.2d 815 (Minn.); *State* v. *White*, 239 N.E. 65 (Ohio).

Other courts hold that a court *may* so examine: *Mattox* v. *State*, 139 So. 2d 653 (Miss. 1962); *State* v. *Aubuchon*, 381 S.W.2d 807 (Mo. 1964); *State* v. *Richards*, 124 N.W.2d 684 (Wis. 1963); *Daniel* v. *State*, 163 S.E.2d 863 (Ga.); *State* v. *Keffer*, 471 P.2d 438 (Or.).

Another court holds that there is *no* duty to so examine: *Campos* v. *State*, 468 S.W.2d 81 (Tex. Crim.).

(Source of above: 7 A.L.R.3d 181, Annot.)

### Conclusions

The court concludes as follows:

1. Defendant's motion to dismiss the indictment is denied.

2. Defendant's request for a more detailed bill of particulars is denied.

3. Defendant should receive forthwith the materials the prosecution will supply voluntarily.

4. Discovery:

(a) Defendant should *not* be supplied with statements made to agents of the Commonwealth, Rule 3A:14(b)(2), on grounds of public policy. *Bellfield* v. *Commonwealth*, 215 Va. 303 (1974). (A public agent is one *"appointed to act for the public in some matter pertaining to the administration of government or the public business."* *Black's Law Dictionary*, 3rd Ed., p. 81.)

(b) The court will review *in camera* all of the material requested by defendant from the Commonwealth, including a determination as to whether the person receiving the statement *was* an agent of the Commonwealth. (This may impose some burden on the Commonwealth's Attorney and the court, but considerations of fairness to the defendant require it.)

(c) Without ruling at this time, the court notes that it seems all statements and information of third parties should be available to defendant, i.e. from Norfolk and Western, Lambert's Point Dock and U.S. Customs.

(d) Only the Commonwealth's Attorney will be present at the *in camera* proceedings.

(e) As required by the Rule of Court, the material that will be granted to defendant must be:

1. Relevant.

2. Known by Commonwealth's Attorney to be in possession, custody or control of the Commonwealth.

3. Made in connection with the particular case.

4. Material to the preparation of the defense.

5. Where request is reasonable.

(f) The Commonwealth's Attorney will prepare a written statement of the discovery and inspection denied by the court during the *in camera* proceeding which shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal by the defendant. The court will review the statement prior to sealing and preserving.

(g) All of the foregoing shall be subject to a continuing duty to disclose as required by subsection (g) of Rule 3A:14.

(h) As its final conclusion, the court is convinced that on the state of the present record, the *in camera* proceeding is the only feasible answer to the several problems presented.

### December 28, 1978

In a letter opinion dated December 14, 1978, the Court ruled that it would inspect the documentary and other similar evidence in the possession of the Assistant Commonwealth's Attorney, *in camera*, but that defense counsel could not be present at the inspection. This, the Court believes, is based on a fair balancing of the interests of the parties. In two, subsequent letters defense counsel reiterated his request to be present at inspection.

The Court concludes that defense counsel's request should be denied. While it is not a direct answer, the following from *Bellfield* v. *Commonwealth*, 215 Va. 303 (1974), is persuasive on the Court:

> In addition, the same policy of fundamental fairness in protecting the ability of the Commonwealth to prosecute, which we recognized in our earlier cases and led to the adoption of Rule 3A:14, is applicable to what would have been a fishing expedition into the Commonwealth's files at trial.

As stated in the letter opinion (page 8), the Court will protect the interests of the defendant by preserving and sealing, for purposes of appeal, any materials denied to the defendant by the Court.

The Court will proceed promptly with its inspection.

### February 14, 1979

If the court should conclude that the language of the Code of Federal Regulations *does* prohibit the production of the documents sought by defendant, then a secondary question arises as to what binding effect the regulations have on a duly constituted State Court. Counsel are requested to address this issue.

The Government is required to disclose investigatory records *except* where the matter involves law enforcement purposes but *only* if the disclosure interferes with enforcement proceedings. Title 5 U.S.C. § 552; 19 C.P.R. Sections 103.10, 103.14; 31 C.F.R. § 1.2. The court concludes that the Government must offer evidence in support of

its position and that defendant should not be denied his right of cross examination in this connection.

### February 15, 1979

Rule of Court 3A:15 provides for the production of writings or objects in the possession of a person not a party to the proceedings; such writings or objects must be material to the proceedings; and upon its production the court "may permit" the writing or object to be inspected by the parties and their counsel.

Counsel for Norfolk & Western Railway Company represents that Rasnake was, in fact, investigated but that much of its general investigation is not concerned with him. Said counsel thereupon offered to produce all material directly concerned with Rasnake and all collateral investigations of others indirectly involving him. Counsel also offered to present testimony subject to cross-examination in this connection and further proposed to submit the entire file of Norfolk & Western Railway Company to an inspection by the Court *in camera.* Consistent with its opinion dated December 14, 1978, (pp. 5, 6, 7, 8), the Court is willing to make such an inspection.

### March 19, 1979

Subject matter is scheduled for trial on March 27, 1979.

1. No hearing has been scheduled for the presenting of evidence by the United States.

2. No N. & W. records have been presented to the court for inspection *in camera.*

3. No motions have been filed or order presented on the foregoing or other affirmative action taken.

The authorities submitted on immunity of United States, pro and con, are not determinative.

### March 26, 1979

Pursuant to its conclusions as outlined in its letter of December 14, 1978, the Court examined *in camera,* and at a later date, the material requested by defendant from the file of the Assistant Commonwealth's Attorney, and now reports as follows:

1. There is no material in the file submitted to the Commonwealth by any third party that was taken by any third party.

2. Any documentary statements or taped statements from prosecuting witnesses were taken personally by the Assistant Commonwealth's Attorney or an agent of the Commonwealth.

3. On some occasions, during the taking of statements or oral interviews, the following persons may have been present on one or more occasions: John Blaski, U.S. Customs Service; Gary Bassett, auditor for N. & W. Railroad; Larry Benton, detective for N. & W. Railroad; Hunter Sims, attorney for Richard Pyle; and licensed court reporters.

4. Insofar as the Assistant Commonwealth's Attorney knows, none of the persons mentioned in No. 3 above took any notes during said interviews. If any notes were taken, or subsequently reduced to writing, copies of same were not supplied to the Assistant Commonwealth's Attorney. If any of such persons had any independent interviews with the witnesses, no documentary evidence thereof was submitted to the Assistant Commonwealth's Attorney.

5. Any claims books or records of N. & W. Railroad as to payment of claims for damaged or stolen property will be shown to defendant's counsel.

6. The Court made an effort to initial all documents it inspected and examined.

### U. S. Customs Service

Defendant seeks discovery of the investigative file of the U. S. Customs Service. It appears such discovery is barred by the statutes and regulations of the United States. *Boske* v. *Comingore*, 177 U.S. 459, 20 S. Ct. 701, 44 L. Ed. 846 (1900). The ruling in *Boske* has been followed in *Stegall* v. *Thurman*, 175 F. 813 (1910); *In re Valecia Cond. Milk Co.*, 240 F. 310 (1917); *Ex parte Sackett*, 74 F.2d 922 (1935); *Harwood* v. *McMurty*, 22 F. Supp. 572 (1938); and *Walling* v. *Comet Carrier*, 3 F.R.D. 442.

*Boske* and *Stegall* were habeas corpus proceedings brought in the Federal Courts for relief from the actions of State courts for failure to produce records in State prosecutions. The other cases originated in Federal courts.

*Walling* recognizes that "The decision so holding (that records from the U.S. cannot be ordered) which

perhaps is most frequently cited on the point is *Boske v. Comingore.*"

In *Stegall* the court held, "Regulations issued by the Secretary of the Treasury with reference to the internal revenue and for the government of the officers of the Revenue Department have the force and effect of law and are as binding as if incorporated in the statute law of the United States." (Headnote No. 1.)

This Court had previously ruled that the United States should produce evidence in support of its motion to quash the subpoena for production of Custom Service's records. (Letter of Feb. 14, 1979). The subpoena was directed to John Blaski, Special Agent for the United States Custom Service, and *not* to the United States Customs Service or some person therein having plenary or dispositive powers. At a hearing on March 23, 1979, Mr. Blaski testified under oath that he had not received authorization to make any disclosure in this matter, as required by 19 C.F.R. § 103.14. Indeed, the evidence showed that he had been ordered by high authority to make no disclosure. Under these circumstances this Court holds that defendant is not entitled to receive the material from Mr. Blaski. *United States ex rel. Touhy* v. *Ragen, et al.,* 340 U.S. 462, 71 S. Ct. 416. There is no duty on Mr. Blaski to produce the evidence mentioned above.

### *Records of Norfolk and Western Railway Company*

The Court has reviewed *in camera* and initialled the investigative records of the Railway and found nothing therein pertaining to any investigation of the defendant herein, direct or indirect. The Court at a hearing following the review explained to counsel for the Commonwealth and the defendant the nature of the review and the conclusions of the Court. (For a fuller discussion see reporter's transcript of hearing held on March 26, 1979. The records reviewed by the Court will be held by the clerk for any proper use by the defendant for purposes of any appeal, if necessary. Rule 3A:14(f), if applicable.)